Next case this morning is 20-8045 Standish v. Jackson Hole Mountain Resort. Let's hear from Mr. Shockey first. Thank you, your honor. In this case, Thomas and Megan Standish went to Jackson Hole and the Jackson Hole Mountain Resort in January of 2017 for their dream ski vacation. Tom had grown up in California ski areas and his wife, now wife Megan, wasn't quite as experienced but this was a dream of a lifetime. It turned out to become a nightmare as we'll see because Mr. Standish suffered a very severe lower leg injury requiring multiple screws and plates and that sort of thing when he encountered an obstacle on the ski slopes in an area where it was perfectly legitimate for he and his wife to be skiing. If you look through my brief or if you have it handy, on page five of the brief is a photograph of the obstacle that Mr. Standish hit. Now that photograph is taken after the first snow. It is showing a stump of a tree about six to six and a half feet tall sticking up and leaning over toward the ski area. If you then go to the next page, page six of the brief, you see where the accident actually happened. The stump is virtually invisible at that point and that's part of the problem because Mr. Standish certainly was a good enough skier that if he could have seen any portion of this stump he could have skied around it or past it and avoided his injury. Well is that little thing in the middle of the circle what's sticking up? Are you on page six of the brief, your honor? I've got some, I guess it's on my bench memo but it's a picture of this of this ski area and it's a circle around it and there's a little thing sticking up and I don't know when it was taken or... Yeah, I think maybe that's another Once Mr. Standish hit this obstacle, which at the time of his injuries was either very right even with the snow level or just below the snow level, once he hit it then a bit more of it became exposed and there was actually testimony from two other skiers who came along shortly afterwards that demonstrates that it was a little bit more visible after he ran into it, which makes sense. Mr. Shockey, I mean is it an inherent risk of skiing that there's going to be unmarked obstacles and hazards on runs and you know doesn't the Wyoming statute you know put you know shift the risk to a skier that it might you know he or she might encounter those obstacles as you know part of the sport of downhill skiing? Well, when we look at the definition of inherent risk, which is a risk that is either intrinsic to or characteristic of the activity involved, the broad-based answer to your question might be yes that you're assuming the risk and I'll get to that one second about the special type of assumption of risk we're talking about here, but the broad answer to your question might be yes. However, there are factors in this case and in this situation which take us far away from just that global view of it. We don't know for sure how that stump became, oh I'm sorry. What does an off-piste run mean to you? Yeah, the off-piste run is a term that is relied a lot by on a lot by the ski resort to suggest maybe there's something wrong with Mr. Standish and his wife skiing there and that's just wrong. No, no, it just means un-groomed, doesn't it? It just means un-groomed. Un-groomed, wouldn't you expect maybe with 18 or 27 new inches and 18 on top of that that it would come up? Well, the other side of that, your honor, is so should the ski area have expected exactly the same thing because we had to adopt what their version of the facts was and they said that some years before Mr. Standish was injured, the other part, the top part of this tree was sticking out and they had to cut it off and they cut it off at snow level. So, they knew, the ski area knew that as the snow levels rose over the winter, the snow would eventually reach to the top of or cover this hazard and that's what happened with Mr. Standish. The hazard became just invisible. He would have a duty to avoid a known hazard. So, does the ski area then have a duty to remove the stump, cut it off at ground level and or remove it? That's our case, your honor. Okay. That's our case. We say that it was a job left undone. That's the phrase from our ski safety expert that they created this hazard by cutting off the top and there are various cases from this circuit and in Wyoming where when the ski area or recreational provider alters the condition, then that's a factor. It's not totally determinative but it's a factor in whether or not they are responsible for the situation as it exists and that takes it out of the realm of being an intrinsic or characteristic hazard of skiing. So, if they left the stump at one foot or 14 inches, they still would be responsible for any injury incurred by a skier? Well, no. They wouldn't be responsible, Mr. Standish, because there would have been five feet of snow over the top of the stump they left. No, let's say, let's just, you know, snow levels are variable. I think your position is any stump that's been created by the ski area and, you know, trimming trees or reducing trees that fall down, any stump created in those circumstances would subject them to liability. The only question would be whether an accident occurred and what the depth of the snow is. Well, that's not exactly our position and the facts as they were in the case and some of the other evidence shows that there have been other stumps cut off in this area apparently and they were all cut off at ground level. No snow, ground level. In this case, what if the snow, what if the stump instead of being obscured was about, say, a foot off of the same accident? Would the resort be liable because it had not removed the stump to ground level which would have prevented the accident? The resort would have a much better defense in saying that Mr. Standish had some responsibility for not avoiding the hazard they created. In other words, if there's a foot or a foot and a half of stump sticking up, Mr. Standish could be charged with the... Well, is that a relevant consideration under your interpretation of the Safety Act? My interpretation of the Safety Act as well as that of Judge Rankin in this court is that every case has to be viewed almost microscopically with respect to the very specific facts of the situation and the accident as it occurred. And so, therefore, our position is that looking at the specific facts and the specific situation when Mr. Standish was injured, we find a liability on the part of the ski area because they knew if they cut it off at snow level in the year or two or five years before they created this stump, then they knew that it could result in a situation exactly as we saw. And by the way, they went and they finally cut that stump down and cut it down to ground level as you're suggesting after Mr. Standish was hurt and after this lawsuit was filed. Just so I understand your position for sure, if the wind had snapped this tree at six and a half feet, you wouldn't be asserting a claim. It's the saw, the resort saw that premises your claim. Is that correct or not? That is almost totally correct, yes. I said in my reply brief at one point, if you touch it, you own it. And the ski area definitely had assumed control of this hazard. They created the hazard and they didn't go back until after Mr. Standish was hurt to mitigate the hazard. Well, looking at page five, the photo that you directed us to, the stump actually appears to serve a purpose, which is to keep the skier away from the trees that are further down the hill to maintain a line away from those. What if the resort had cut this stump at 10 feet? Then you'll say he wouldn't have hit it, but would that have saved, it's just hit it right at the wrong, they cut it right at the wrong length? Well, I'm not so sure they understood what they were doing when they cut it. We know that they say they cut it at snow level then. And so at the time they cut it, we believe that they had knowledge that it could present this hazard when the snow is barely up to it or right at it or just over it. And they knew it was a hazard. It took our lawsuit and our claims to make them finally believe they should go and eliminate the stump. I'm sorry, I didn't hear your whole question, your honor. Does the evidence reflect when this tree was cut? No, we don't. We don't have a time on that. We simply have the sort of best memory of the ski people that they cut it a year, a few years before and they didn't keep records of that or anything like that. Okay. Mr. Shockey, Jackson Hole versus Roarman seems to incorporate some analysis of the Colorado Ski Safety Act and at least some of the Wyoming cases look to it for guidance. As your opposing counsel points out, the Colorado Act lists as one of the inherent risks of skiing rocks and also stumps. Why doesn't that position from Roarman guide us and would counsel us in finding that stumps are an inherent part of the risk of skiing? Well, a natural stump might be, but Judge, your question goes to two different issues. One is what should Judge Rankin have been doing when he's substituting his judgment for that of what a juror might know and a juror wouldn't know about the Roarman case and a juror wouldn't know about the Colorado statutes and that's a big part of our argument is that Judge Rankin mistakenly looked at many other states and many other statutes to get a sense of how he as a judge might assess the case and it's our position that on summary judgment he should only be looking at the facts as they existed and only facts that would go to a jury and the jury wouldn't be hearing about other cases statutes and the other states statutes and the jury wouldn't be hearing about a number of other cases both in Wyoming and in the federal courts where Judge Rankin seemed to compare well this is sort of like that. Here's an example, the Cooperman case, a long-standing case in this judicial circuit was a case where the cinch on a horse saddle wasn't tightened up enough and in that case the well that's an inherent risk because it can happen all the time it's very common and so on and so forth and Judge Rankin used that as an example in one case in one way to say that so are stumps but that ignores his own view that you have to look at these microscopically and specific to if a hazard is really common and happens a lot then that's an inherent risk but if it's uncommon it isn't an inherent risk and this was somewhat of an uncommon risk created by the resort themselves in order to ultimately end up in Mr. Standish's industries. Now I only have a little over half a minute left and I'd like to reserve you know just a comment or two for rebuttal if I could. I urge you though don't don't look at other cases and don't look at what if it happened a week before or what if the stump was taller or shorter we have to look at how it was the day it happened and assess it on those on that basis according to this court's decisions. Thank you. All right let's hear from Jackson Hole. You're on mute. You're on mute Mr. Lubing. You are on mute. I apologize. Please support counsel. I think you can hear me now. I can't thank you. I would like to address a few issues that were just raised. It's not the discussion about cutting the tree off at a particular height and Judge Phillips had asked what if the wind had caused it to break. The reality is and I believe it's in the record with the expert reports the best supposition is that it did break off and therefore somebody up there with a chainsaw cut it off at snow level in the winter time. That's the best guess speculation but we don't know and there's it's not a given or accepted that a ski patroller simply went up there and decided to cut that tree off at snow level. There'd be no logical reason for that but we're never going to know and the did appear it had been a while. Yes the tree was cut down after that would likely be inadmissible if we wanted it to be in any trial to win any jury but I don't know what particular relevance it has. Having done that can't create a duty where none existed and Judge Rankin has found that none existed and the issue of Judge Rankin looking at other cases and other states rather as as to their acts that wasn't Judge Rankin. I think it might have been it was either the Rohrman case on a certification or the Muller case on a certification which is probably not in the briefing. I think it was Rohrman and the other states uniformly talk about hitting trees, stumps, rocks and they also talk about variable snow conditions changing snow conditions. The focus has been here on the whatever happened to that tree and who did it and according to plaintiff's expert Mr. Gale they didn't finish the job by going up there and cutting it off at ground level. The real focus here in our position is Judge Rankin's position basically was this is about variable snow conditions as the question was posed by I think Judge Kelly a week earlier or probably potentially a couple weeks worth of snow later. This tree posed no risk. Every tree up there that is more you know they open the resort there's 36 inches of snow. Three foot trees are a hazard. It's a wild mountain environment and it's intended to stay that way so they don't groom it typically they don't cut vegetation on those slopes the off-piste slopes typically. It's basically if people want to experienced skiers want to go in there and they want to ski the steep stuff that is available at Jackson Hole Mountain Resort like probably no other resort in the U.S. Let me ask you a question let me ask you a question on Mr. Shockey's if you touch it you own it point which I'm sorry Mr. Shockey mentioned that he had a stated in his reply brief something the effect if you touch it then you own it and on that point the last that word that I see from us is Roberts versus Jackson Hole Mountain Resort and here's my concern here's my focus at least right now is scattered throughout here and I have it open to two pages and I see three references to it I'll just read this very quickly following this amendment a critical distinction has emerged in the case law between a provider's failure to control inherent risk which is no longer actionable and actions that affirmatively enhance existing risk which remain actionable that's our court speaking and Judge Rankin acknowledged this case he acknowledged this notion and he dealt with that by saying that's dictum and perhaps it is dictum but our word processors are plugged in and I guess I would why shouldn't that be the line of demarcation and if it is then how can the resort say it didn't affirmatively enhance existing risks well first off I think it has been accepted by the experts and it's in the record that the the reason that tree was cut at all was to mitigate a risk and you could make the argument that okay it created another risk that's always going to be the case if you unless they do go up there and cut things off right at ground level every time that's impracticable and it's impossible for them to actually maintain it that's the fundamental or maintain it in a perfectly safe condition that's the fundamental basis of the safety act and as what was mentioned earlier and now the ski act and was mentioned earlier if the reason there are stumps up there and the reason that stumps are mentioned in the act is because there has been human activity but every one of these to my knowledge every one of these other states and now our ski safety act mentions stumps as one of the potential risks and I had I think Mr. Gale I think we quoted quoted him and plaintiffs or um in our in our briefing Mr. Gale the plaintiff's expert actually said to me in the deposition um Mr. Mr. it was a day of bad luck for Mr. Standish a combination of factors I don't accept the proposition that the risk was increased the mountain was in many maintained did that create another potential risk there's a lot of risk up there that's the basis for the act if they couldn't have cut the tree I mean say the the kind of assumption was the tree had broken off if they would not have cut it if that were the case somebody's skiing along they're going to hook their ankles on it and suffer another type of injury so there isn't there is a difference between boulders and pits caused by boulders which nobody expects anyone to take a bulldozer up there and level off all the boulders as opposed to a tree stump which as soon as the snow melts all you have to do is cut it and problem solved why is that out of bounds so to speak why am I because um that terrain specifically the off-piste terrain I mean there's plenty of stumps and trees as you can imagine and short trees and small trees and three foot trees and ten foot trees it's part of the risk of alpine skiing it's inherent it's integral to it unless they want to turn it into one of the groomed runs which it's not if this had happened on a regularly groomed run then I would think this case would make perfect sense but it didn't it happened on what is essentially backcountry skiing that is minimally maintained for obvious and old foot obvious and open risks that the ski patrol can identify and part of the reason for the Recreation Safety Act and now the Ski Safety Act is because it's essentially impossible to perfectly to have to offer that kind of recreational experience and provide a safety blanket along with it people don't ski that terrain because it's perfectly groomed and taken care of it's they ski it because then they can go home and tell their friends they skied the big one and all the trees and they they had a great time and you know sometimes they get hurt and that's what I haven't skied Jackson Hole but a lot of Colorado resorts at least even on groomed runs put a sign up at the top that says beware of unmarked hazards you know on groomed runs especially early in the season is that enough to kind of evade any application or is that enough to avoid negligent suits like this and seek the protection of the Safety Act? I don't know that it's germane I mean I don't know that I mean there is there are warnings and his pass actually contained language just like you're talking about the Ski Safety Act requires them at every as I recall every lift loading area there's a great big sign right at the tram at the bottom so they are there it is but it isn't directly on point because the Ski Safety or the Recreation Safety Act in effect in this at the time of this case makes no distinction between hazards that are known and unknown it says it doesn't make any it or not it's still in an errant risk so I don't know. Your position really would be more or less any man-made manipulation of off-piste run is immune from liability let's assume instead of you know the facts here that there'd been a grove of trees in the middle of run and you know same facts you know big wind so they they cut them down and you have two or three six-foot stumps right in the middle of an off-piste run total immunity under the Safety Act? If you mean if they cut them and they create I guess in this case a tops of trees right in the um I guess part of it would be the rationale for doing it but I don't um I don't see how it differs I don't think it's necessarily a quantity issue it's more of a quality issue if that's the right phraseology so I don't know that that would have made a difference now if there is willful and wanton type of misconduct that's never going to fall within the inherent risk by the analysis of any court I'm sure but I would like to point out a couple more analogies if a person goes down and hits a sign that's in a reasonable place on the mountain and it's there in order to enhance safety it still creates a potential risk of somebody hitting it and we've that case and the case was in the 10th circuit where a woman fell and hit a sign now the case was dismissed on other grounds by Judge Friedenthal but nevertheless the sign is man-made lift towers are man-made people falling out of chairlifts is an inherent risk and has been ruled as much um at least by a Wyoming jury in a case I had so I don't think you can simply say if there's involvement it can't be inherent risk they have to be able to whatever level try to mitigate dangers without creating another liability because maybe it's not the same danger maybe it's a little less and maybe it's a little more but the time they did it it mitigated a danger which I think is kind of accepted in this case Mr. Shockey may feel otherwise but I think both experts assume that why doesn't it get get to it these issues get to a jury under the under the cases that suggest it's very fact specific you mean should how could this not go to a jury for me I don't think the facts are in dispute I mean we agree that someone at the had to have cut it off they had to have cut it off in the winter because that only made sense because of the level it was cut at six and a half you know they wouldn't be up there I mean there's no reason to be up there with a chainsaw probably cutting it off but we don't we don't really know those facts but they're not there's no evidence there to provide to a jury for any judge Rankin's whose job would it was to determine duty and I would like to address the you know it kind of puts part of the purpose of the Recreation Act was determined to protect people providing potentially dangerous activities to populace and to to say well you tried to fix it yeah that's great but instead you created a kind of a sub risk now and somebody got hurt that puts recreation providers in exactly the catch 22 that I don't think the legislature intended the legislature wants them to try to make things safer going hand in hand with presenting recreational opportunities without facing these kinds of suits if people voluntarily you know there's the case about the timorous need not attend or apply from the Supreme Court I think but that you know at some level people have to accept that that's the doctrine of primary assumption or risk which we think is in play and I would like to say in the Creel case from the U.S. Supreme Court when there's questions these you know they've kind of finally weighed in on this those that's entirely distinguishable I mean there you had and in the Dunbar case and that was in this court where the provider actually did tell somebody to do something that increased the risk I think my dad I think your time's expired I think Mr. Schock you had a few seconds left you're on mute Mr. Schock the duty determination in a case like this is fact dependent and that's why on page 11 of my brief I cite a long string of cases from this circuit that say that this is a jury question judge Rankin shouldn't have answered the jury question by relying on facts outside the record other cases in other states and we ask that you send this back for a jury trial please thank you counsel your excuse and case is submitted